UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | )  CR-05-71-B-W |
| | ) |
| | ) |
| COSME SANCHEZ RAMIREZ, | ) |
| | ) |
| Defendant. | ) |

**SENTENCING ORDER**

On July 3, 2007, after a bench trial, the Court found Cosme Sanchez Ramirez guilty of violating 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, 18 U.S.C. § 922(a)(6), False Statement in Acquisition of a Firearm, and 18 U.S.C. § 911, False Claim of Citizenship. *See United States v. Ramirez*, 495 F. Supp. 2d 92 (D. Me. 2007). In anticipation of sentencing, the Court concludes that his three prior burglaries are predicate felonies under the Armed Career Criminal Act (ACCA); that, even though Mr. Ramirez pleaded guilty to two burglaries on the same day, they should each count as convictions under the ACCA; that he is not entitled to a reduced sentence for diminished mental capacity under U.S.S.G. § 5K2.13; and, that he should not receive an acceptance of responsibility reduction under U.S.S.G. § 3E1.1. It leaves for the sentencing hearing whether Mr. Ramirez's immigration status and desire to return to Cuba should impact his sentence under 18 U.S.C. § 3553(a).

I.  **DISCUSSION**

    A.  **Armed Career Criminal Act Violent Felony Designation**

On March 1, 1990, Cosme Sanchez Ramirez was sentenced for two burglaries in the state of Florida and on April 27, 1995, he was sentenced for a third burglary, again in Florida.[1] *Revised Presentence Report* at ¶¶ 26-28 (PSR). The ACCA dictates that if a defendant, who has violated 18 U.S.C. § 922(g), has three qualifying convictions, he must be sentenced to a minimum sentence of fifteen years. 18 U.S.C. § 924(e)(1). The PSR concluded that the Florida burglaries satisfy the ACCA's requirement and subject Mr. Ramirez to a fifteen year mandatory minimum sentence. PSR at ¶ 65. Mr. Ramirez argues that the three Florida burglaries should not count as qualifying convictions under the ACCA, 18 U.S.C. § 924(e).

Under federal law, an individual becomes a career criminal with a mandatory enhanced sentence when he or she has three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e). A violent felony is defined as "any crime punishable by imprisonment for a term exceeding one year . . . that – (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B). The statute's inclusion of "burglary" as a named predicate offense under the ACCA paired with Mr. Ramirez's three burglary convictions would seem to end the discussion as to whether he fits under the enhanced penalty provisions of the ACCA. It is not nearly so simple.

---

[1] Mr. Ramirez was convicted and sentenced on the first two burglaries on March 1, 1990; he pleaded *nolo contendere* to the third burglary on July 24, 1994 and was sentenced on April 27, 1995. *Government Ex. 8-10*. Mr. Ramirez's *nolo contendere* plea to the 1994 burglary still counts as a conviction under the ACCA. *United States v. Drayton*, 113 F.3d 1191, 1193 (11th Cir. 1997). There is authority under Florida law that a *nolo* plea may not be considered a conviction, but only if adjudication of guilt was withheld. *See United States v. Willis*, 106 F.3d 966, 970 (11th Cir. 1997). Here, the April 27, 1995 judgment confirms that he was adjudicated guilty. *Government Ex. 10*.

On August 26, 1997, Mr. Ramirez was also charged and convicted in the state of Georgia with obstruction of justice and terroristic threats, which would count as violent felonies under the ACCA. *PSR* at ¶ 30. These convictions arose out of an altercation with a police officer. Mr. Ramirez has not challenged these convictions as predicate felonies, but implies they count as one conviction.

### 1. Burglary in Florida

In Florida, at the time of Mr. Ramirez's convictions, "'burglary' mean[t] entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain."[2] Fl. Stat. § 810.02(1) (1994). The definition of "structure" in Florida includes the curtilage. *Id.* § 810.011(1) ("Structure means a building of any kind . . . together with the curtilage thereof."). Each of Mr. Ramirez's Florida convictions was for burglary in the third degree, the least serious within Florida's three-tiered classification system for burglaries. *Def.'s Sentencing Mem. Attach. 1*; *Def.'s Sentencing Mem. Attach. 2*; *Def.'s Sentencing Mem. Attach. 3*. Third degree burglary was defined as burglary of a "[s]tructure, [so long as] there is not another person in the structure at the time the offender enters or remains . . . ." *Id.* § 810.02(3). To be eligible for burglary in the third degree, an offender while in the course of committing the offense must "not make an assault or battery and [must] not [be] armed . . . with a dangerous weapon or explosive . . . ." *Id.* § 810.02(4).

### 2. The *Taylor v. United States* Two-Tiered Analysis

To determine whether Mr. Ramirez's convictions fall within the ACCA, the Court must consider the *Taylor v. United States* two-tiered analysis. 495 U.S. 575, 599 (1990). In *Taylor v. United States*, the Supreme Court concluded:

> [A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or a structure, with intent to commit a crime.

*Id.* at 599. *Taylor* noted that some state criminal statutes define "burglary" more broadly than the generic definition of burglary, and addressed whether "in the case of a defendant who has

---

[2] This definition applies to burglaries committed on or before July 1, 2001. Fla. Stat. § 810.02(1)(a).

3

been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary." *Id.* at 599-600. In deciding this question, the Court adopted a categorical approach to determine whether a state statute met the federal definition for a predicate offense – those listed in 924(e)(2)(B)(ii). *Id.* at 600-01.

The two-step categorical approach requires the court to first review the statutory elements of the prior crime and compare them to the elements of a generic burglary. *United States v. Cadieux*, 500 F.3d 37, 42-43 (1st Cir. 2006). Under this prong, the "inquiring court, confronted with a prior burglary conviction, must first examine whether the conviction was based upon a statute that dovetails with the definition of generic burglary." *United States v. Miller*, 478 F.3d 48, 50 (1st Cir. 2007). If it does, the "inquiry ends and the prior conviction may be used as an ACCA predicate." *Id.* at 50-51. If the "underlying statute sweeps more broadly and defines burglary in terms that encompass but exceed the parameters of the generic definition, the court must move to the second step of the *Taylor* pavane in order to determine if the particular conviction actually embodied every element of a violent felony." *Id.* at 51 (internal punctuation omitted). Although the Government bears the burden of proving that a predicate conviction qualifies as a conviction under the ACCA, its burden is "modest" and can be "satisfied in divers ways." *United States v. Brown*, Nos. 05-2830, 06-1306, 2007 U.S. App. LEXIS 28298, at *41-42 (1st Cir. Dec. 7, 2007) (quoting *United States* v. *Cordero*, 42 F.3d 697, 701 (1st Cir. 1994))

        **3.**     **The *Taylor* Analysis: The Florida Burglary Statute and Conveyances**

             **a.**     **The First Tier: Conveyances and the Generic Definition of Burglary**

Under Florida law, the definition of "burglary" in effect when Mr. Ramirez was convicted of all three crimes included entering a conveyance. Fla. Stat. § 810.02  The inclusion of conveyances, which Florida law defined as including "any motor vehicle, ship, vessel, railroad

4

vehicle or car, trailer, aircraft, or sleeping car," makes section 810.02 broader than the generic definition of burglary, which is limited to a building or structure. *See Shepard v. United States*, 544 U.S. 13, 15-16 (2005) ("The Act makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle."). Thus, Florida's burglary statute "sweeps more broadly" than the generic term in the ACCA. *Miller*, 478 F.3d at 50.

### b. The Second Tier: Burglary of Conveyances and Mr. Ramirez's Convictions

The Court proceeds to the second tier of analysis – considering whether Mr. Ramirez's actual convictions fall within generic burglary under the ACCA. According to *Shepard*, the court may examine "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. Here, the parties have supplied the charging documents and judgments in each case. They establish that Mr. Ramirez was charged and convicted of burglary of a structure, not a conveyance. *Def.'s Sentencing Mem. Attach. 1* ("[Defendant] did unlawfully enter or remain in a certain structure, the property of THE BETHEL TEMPLE ASSEMBLY OF GOD"); *Def.'s Sentencing Mem. Attach. 2* ("[Defendant] did unlawfully enter or remain in a certain structure, the property of ST. JOHN PRESBYTERIAN CHURCH"); *Def.'s Sentencing Mem. Attach. 3* ("[Defendant] did unlawfully enter or remain in a structure, to wit: a building and/or the curtilage thereof . . . the property of THE FIRST BAPTIST CHURCH and/or REV. LAWRENCE COLE"). Based on these documents, the Court can eliminate the possibility that Mr. Ramirez's crimes involved a conveyance and, therefore, none of his burglaries can be excluded from the definition of generic

5

burglary based upon the inclusion of conveyances in the Florida statute. *See James v. United States*, 127 S. Ct. 1586, 1599 n.7 (2007).

### 4. The *Taylor* Analysis: The Florida Burglary Statute and Curtilage

#### a. The First Tier: Curtilage and the Generic Definition of Burglary

Concluding that the crimes involved a structure, however, does not necessarily resolve whether the crimes were predicate felonies under the ACCA. As stated above, Florida's burglary statute is also untraditional in that it includes the curtilage in its definition of "structure." Fla. Stat. § 810.011(1) (1994). Interpreting the same Florida statute, the United States Supreme Court recently concluded that the "inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of generic burglary set forth in *Taylor*, which requires an unlawful entry into, or remaining in a '*building or other structure*.'" *James*, 127 S. Ct. at 1599 (emphasis in original). Under the first tier of *Taylor* and consistent with *James*, burglaries in Florida are not generic because they can include burglary of a curtilage.

#### b. The Second Tier: Curtilage and Mr. Ramirez's Convictions

The Court turns to the documents reviewable under *Shepard* to determine whether they clarify the actual underlying offenses. They do not. The charging documents for the first two offenses merely alleged that Mr. Ramirez entered or remained "in a certain structure," which by statutory definition does not exclude curtilage. The charging document for the third offense expressly alleged "building and/or curtilage thereof." *Def.'s Sentencing Mem. Attach. 3*. The judgments in all three burglaries do not establish whether Mr. Ramirez actually entered the buildings – as opposed to merely the curtilage. Reviewing the documents permissible under *Shepard* does not establish that Mr. Ramirez committed burglaries within the ACCA's meaning.

6

> 5.  **The Residual Provision: Whether the Conduct "Otherwise . . . Presents a Serious Potential Risk of Physical Injury"**
>
>> a.  **Attempted Burglary in *James v. United States***

In *James*, the United States Supreme Court considered an analogous issue involving the same Florida burglary statute. *James* concerned whether attempted burglary in Florida met the ACCA's residual definition of a crime which "has as an element the use, attempted use, or threatened use of physical force against the person of another."[3] *James*, 127 S. Ct. at 1591 (quoting 18 U.S.C. § 924(e)(2)(B)(i)). After concluding that the definition of "attempt" under Florida law as interpreted by Florida courts qualifies as "conduct that presents a serious potential risk of physical injury to another," the Supreme Court turned to the question before this Court: whether the extension of the Florida burglary statute to curtilage removes the crime from the residual provision. *Id.* at 1594, 1599-1600. It stated the issue as follows: "Is the risk posed by an attempted entry of the curtilage comparable to that posed by the attempted entry of a structure . . .?" *Id.* at 1600.

*James* observed that the Florida Supreme Court has interpreted "curtilage" narrowly, requiring "some form of an enclosure in order for the area surrounding a residence . . . ." *Id.* (quoting *State v. Hamilton*, 660 So. 2d 1038, 1044 (1995)). In *Hamilton*, the Florida Supreme Court concluded that a yard surrounded by trees was not "curtilage." The Court in *James* also cited *United States v. Matthews*, in which the Eleventh Circuit stated that Florida case law "construes curtilage narrowly, to include only an enclosed area surrounding a structure." 466 F.3d 1271, 1274 (11th Cir. 2006). In view of this narrow definition, *James* concluded that the

---

[3] In *James*, the parties agreed that the attempted burglary under Florida law was not a burglary under the ACCA and *James*, therefore, focused on whether an attempted burglary fit within the residual provision. *James*, 127 S. Ct. at 1591.

7

inclusion of curtilage does not "so mitigate[] the risk presented by attempted burglary as to take the offense outside the scope of clause (ii)'s residual provision." *James*, 127 S. Ct. at 1600.

*James* explained:

> [A] typical reason for enclosing the curtilage adjacent to a structure is to keep out unwanted visitors – especially those with criminal motives. And a burglar who illegally attempts to enter the enclosed area surrounding a dwelling creates much the same risk of physical confrontation with a property owner, law enforcement official, or other third party as does one who attempts to enter the structure itself.

*Id.* As breaching the curtilage "requires both physical proximity to the structure and an overt act directed toward breaching the enclosure," an attempted burglary "presents a serious potential risk that violence will ensue and someone will be injured." *Id.* (quoting *Matthews*, 466 F.3d at 1275).

### b.     *James* and Burglary in the Third Degree:  The Arguments

There are two distinctions between *James* and Mr. Ramirez's case. First, *James* concerned an attempted burglary and Mr. Ramirez committed actual burglaries. To the extent this distinction makes a difference it runs against, not in favor of Mr. Ramirez. Second, *James* involved an attempted burglary of a dwelling; Mr. Ramirez committed burglaries of an unoccupied structure. To the extent this factor makes a difference, it inures to Mr. Ramirez's advantage.

In seeking to distinguish the attempted burglary of a dwelling in *James* from the actual burglaries of unoccupied businesses for which he was convicted, Mr. Ramirez takes a narrow view of the *James* holding, citing sections that discuss the residential nature of the burglary, and arguing that the *James* analysis applies only to dwellings. *Def.'s Sentencing Mem.* at 6-8. He further argues that "under the *James* analysis, that risk [of violence] is significantly diminished

8

in a business curtilage burglary as compared to a dwelling curtilage burglary, especially when the structure is unoccupied." *Id.* at 6.

The Government responds that under *James*, the risk of violence of an attempted burglary of a residence and a burglary of an unoccupied business or the business' curtilage are comparable. *Government's Resp. to Def.'s Sentencing Mem.* at 3-4. The Government emphasizes the risk of "face-to-face confrontation between the burglar and a third party." *Id.* (quoting *James*, 127 S.Ct. at 1594-95). In his reply, Mr. Ramirez attempts to further distinguish *James*, arguing that burglary of a dwelling is more serious than a burglary of a business because an unoccupied business structure poses much less risk than an occupied home, and "an unoccupied business structure has less potential to have unexpected visitors."[4] *Def.'s Reply* at 2-3.

### 6. Analysis

In the context of attempted burglary of a residence, the Supreme Court wrote that "[t]he main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, a police officer, or a bystander – who comes to investigate." *James*, 127 S.Ct. at 1594; *Cadieux*, 500 F.3d at 43 (applying the *James* analysis). This same risk exists for both businesses and residences, and the Court is not convinced by Mr. Ramirez's arguments that "the risk of confrontation declines" because of the business nature of the structure. *Def.'s Sentencing Mem.* at 8. To that point, the First Circuit has repeatedly reiterated its view that "the burglary of a commercial building poses a potential for episodic

---

[4] The state of Florida recognizes a narrow distinction between burglaries of dwellings and structures. The burglary of a dwelling is a second degree felony regardless of whether a person was there at the time; the burglary of a structure is a second degree felony if a person was present, but a third degree felony, if no one else was in the building at the time. Fla. Stat. § 810.02(3), (4).

9

violence so substantial as to bring such burglaries within the violent felony/crime of violence ambit." *United States v. Fiore*, 983 F.2d 1, 4 (1st Cir. 1992);   In *Fiore*, the First Circuit quoted the United States Supreme Court in *Taylor* as observing that "commercial burglaries often 'pose a far greater risk of harm' than burglaries of dwelling places." *Fiore*, 983 F.2d at 4 (quoting *Taylor*, 495 U.S. at 594).

Mr. Ramirez next argues that because the structures were unoccupied, his former convictions do not meet the § 924(e)(2)(B)(ii) standard. He states that "[a]lmost all unoccupied business burglaries will occur only when the business is closed and the risk of confrontation is virtually eliminated." *Def.'s Reply* at 3.  However, the risk of "confrontation between the burglar and a third party" is present whether or not the business is occupied.[5] *James*, 127 S. Ct. at 1594; *United States v. Payne*, 966 F.2d 4, 8 (1st Cir. 1992).  In addition, the list of generic crimes included in § 924(e)(2)(B)(ii) does not distinguish between burglaries of occupied and unoccupied structures.  The Court concludes, based upon *James*, that the burglaries here "involve[] conduct that presents a serious potential risk of physical injury to another."[6]  18 U.S.C. § 924(e)(2)(B)(ii).

---

[5] Although an unoccupied structure by definition does not present a risk to an occupant, an unoccupied structure presents a different set of risks for a violent confrontation.  An unoccupied building could be under greater surveillance by the police, under surveillance by private security, and under the watchful eye of the owner. Depending on the circumstances, the presence of an individual at an unoccupied building could draw more attention from passersby than his presence at an occupied building or dwelling.

[6] The parties discuss whether the Court should consider First Circuit precedent regarding career offenders under United States Sentencing Guideline § 4B1.2(a)(e).  Because of the clear precedent set out by the United States Supreme Court and the First Circuit, the Court need not rely on the § 4B1.2 analysis to come to its conclusion.  *See United States v. Giggey*, 501 F. Supp. 2d 237, 244 (D. Me. 2007) (highlighting the differences between the sentencing guidelines and the statutory requirements).

### B. Whether Mr. Ramirez's 1990 Convictions Should be Considered Separate Crimes Under the ACCA

On March 1, 1990, Mr. Ramirez pleaded guilty to two of the third degree burglaries discussed above in the Hillsborough County Circuit Court.[7] *Government Ex. 8, 9*. Mr. Ramirez argues that these convictions should be considered one, not two convictions, because they were entered on the same date.[8] *Def.'s Sentencing Mem.* at 10. It is also true that the sentences were concurrent. *Government Ex. 8, 9*. The evidence reveals that Mr. Ramirez was charged on January 12, 1990 in a three count Information with committing burglary in the third degree.[9] *Def.'s Sentencing Mem. Ex. 1*. The Information states that he entered or remained in the property of The Bethel Temple Assembly of God in Hillsborough County, Florida on December 23-24, 1989. *Id.* Then, on January 16, 1990, he was charged in a one count Information with burglary in the third degree for entering or remaining in the property of the St. John Presbyterian Church on November 14, 1989. *Def.'s Sentencing Mem. Ex. 2*. The two cases came before the Hillsborough County Circuit Court on March 1, 1990, and Mr. Ramirez was adjudged guilty of both crimes. He received a three year concurrent sentence. *Government Trial Ex. 8* at 3.

As Mr. Ramirez acknowledges, the First Circuit has ruled on this issue, and the Court is bound by the Circuit's precedent. *Eulitt v. Maine*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to

---

[7] In his motion, Mr. Ramirez refers to the PSR, which contains some information about these convictions, to Government Exhibits 8 though 10, which were admitted during the trial in this case, and to the Informations attached as Exhibits to his (and to the Government's) memorandum. *Def.'s Mem.* at 3. In evaluating this motion, the Court has considered the contents of the Informations, the trial exhibits, and the PSR.

[8] Mr. Ramiriz's contention may not make any difference. The ACCA requires three predicate felonies and, even if he is right on this issue, he may still have three predicate felonies: the 1990 Florida convictions (counted as one); the 1995 Florida conviction; and, the 1997 Georgia terroristic threat conviction. Terroristic threat does not appear to be a categorically violent crime. *See United States v. Greer*, 359 F. Supp. 2d 1376, 1380-81 (M.D. Ga. 2005), *abrogated on other grounds*, 440 F.3d 1267, 1272 (11th Cir. 2006). The Defendant raised the issue "to preserve it for appeal." *Def.'s Mem.* at 10. The second-tier *Shepard* information before the Court on the terroristic threat conviction is not definitive. The Court will, therefore, address whether the Florida 1990 convictions are one or two convictions under the ACCA.

[9] Mr. Ramirez was also charged with burglary of a conveyance in the third degree and petit theft; he pleaded guilty to both charges along with burglary of a structure. *Government's Ex. 8*.

11

ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."). In *United States v. Harris*, 964 F.2d 1234, 1238 (1st Cir. 1992) *abrogated on other grounds by Shepard v. United States*, 544 U.S. 13 (2005), the First Circuit concluded that two assault and battery crimes involving the same victim, for which the defendant was convicted and sentenced on the same day, were separate offenses because the crimes were perpetrated on different days in two different locations. *See United States v. Callahan*, 149 Fed. Appx. 4, 6 (1st Cir. 2005); *United States v. Stearns*, 387 F.3d 104, 108 (1st Cir. 2004). Mr. Ramirez was convicted on the same day of crimes perpetrated against different victims on different days in different locations. Under the ACCA, these two crimes are separately counted.[10] *Harris*, 964 F.2d at 1238.

C. **Diminished Capacity**

Mr. Ramirez next argues that a diminished capacity downward departure is warranted under the United States Sentencing Guidelines. Section 5K2.13 of the guidelines states: "A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental

---

[10] The analysis for predicate crimes under the ACCA differs from the analysis for computation of a defendant's criminal history under the Sentencing Guidelines. The ACCA analysis is a matter of statutory interpretation. *Stearns*, 387 F.3d at 108. It requires the court to evaluate whether the crimes were committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). The First Circuit has instructed that the "'occasions' inquiry conceivably may turn upon any combination of circumstances, including (but not limited to) the identity of the victim; the type of crime; the time interval between the crimes; the location of the crimes; the continuity *vel non* of the defendant's conduct; and/or the apparent motive for the crimes." *Stearns*, 387 F.3d at 108. There are similarities between the November 14, 1989 and December 23-24, 1989 burglaries: they both involve unlawful entry into church property; they are the same crime in the same degree; they took place in the same County; they were pleaded to and sentenced on the same day; and, the sentences ran concurrently. Nevertheless, the case law does not support a conclusion that the crimes occurred on the same occasion within the meaning of the ACCA statute. As noted, the burglaries were over five weeks apart and involved different victims at different locations.

Similarly, Mr. Ramirez can draw no support from a recent change in the calculation of criminal history for purposes of § 4A1.2(a)(2) of the Sentencing Guidelines. To calculate criminal history under the Guidelines, the two burglary sentences would be counted as a single sentence, since the sentences were imposed on the same day and there is no evidence of an intervening arrest. Unfortunately for Mr. Ramirez, however, the guideline revision does not apply to ACCA status. *See Giggey*, 501 F. Supp. 2d at 244.

capacity contributed substantially to the commission of the offense." U.S.S.G. § 5K2.13. Downward departures are not allowed, in relevant part, if:

> (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; [or] (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public."

*Id.* Significantly reduced mental capacity "means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful. U.S.S.G. § 5K2.13 Application Note 1. Mr. Ramirez bears the burden of showing that he suffered from "significantly reduced mental capacity" and that this mental capacity "contributed substantially to the commission of the offense" by a preponderance of the evidence. U.S.S.G. §§ 6A1.3, 5K2.13.

### 1. Intoxication as a Bar to a Diminished Capacity Reduction

Mr. Ramirez is not entitled to a diminished capacity reduction if his "significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13. In its Order finding Mr. Ramirez guilty, the Court found that Mr. Ramirez was not intoxicated at the time he committed these offenses, *Ramirez*, 495 F. Supp. 2d at 120, and, therefore, there is no basis to deny application of § 5K2.13 based on his active intoxication at the time of the offenses. The Court also rejected Dr. Martinez's diagnosis of "underlying schizophrenic symptoms . . . exacerbated by his alcohol abuse . . . ." *Id.* at 123. Instead, it adopted Dr. Scronce's view that Mr. Ramirez was "not suffering from an underlying mental

13

disease or defect on April 13, 2005 . . . ." *Id.* The intoxication exception does not bar application of § 5K2.13 in this case.

### 2. Actual Violence or Serious Threat of Violence as a Bar to a Diminished Capacity Reduction

A second potential bar to application of § 5K2.13 is if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13. As there is no indication of actual violence in this case, the issue turns on whether there was "a serious threat of violence." *Id.* This Court has previously determined that a conviction for attempted possession of a firearm in violation of 18 U.S.C. § 922(g)(4) does not necessarily disqualify a defendant from a § 5K2.13 departure. *United States v. Boutot*, 480 F. Supp. 2d 413, 418 (D. Me. 2007). The Ninth Circuit has concluded the same for actual possession of a firearm by a felon. *United States v. Cantu*, 12 F.3d 1506, 1513-14 (9th Cir. 1993). If the crime is not a crime of violence, the departure under the "serious threat of violence" provision is case-specific. *Id.*

Here, Mr. Ramirez handled two firearms – a Jimenez Arms 9 millimeter and a High Point .380 pistol. *Ramirez*, 495 F. Supp. 2d at 94. He expressed a preference for the High Point because it was smaller and he told the dealer that guns "are supposed to be small so you can hide them in your clothes or put them in your pocket" so that "if a person walked near you or a police officer came in contact with you, he wouldn't be aroused or think that you are armed in any way." *Id.* Finally, a patron at the pawn shop testified that he heard Mr. Ramirez say that he "wanted to be able to hide a weapon on him so that no one would know . . . [so that] he could get

the man before the man got him."[11] *Id.* A cab driver testified that Mr. Ramirez told him he wanted the gun for protection. *Id.*

The Court cannot conclude that the circumstances of Mr. Ramirez's offenses did not present a "serious threat of violence." U.S.S.G. § 5K2.13. As he committed these crimes, he vocalized his interest in the possession of a small, easily concealable firearm with the expressed purpose of hiding it in his clothes to shoot someone before he himself was shot. It is true that Mr. Ramirez's statements in the pawn shop did not constitute a direct threat to shoot a specific person, which would ordinarily prohibit application of a § 5K2.13 downward departure. *See United States v. Hunter*, 985 F.2d 1003, 1007 (9th Cir. 1993); *but see United States v. Weddle*, 30 F.3d 532, 540 (4th Cir. 1994). Nevertheless, the Court cannot conclude that Mr. Ramirez did not mean what he said. *See United States v. Walter*, 256 F.3d 891, 895 (9th Cir. 2001) (finding that "real intent to cause physical harm" is significant for a 5K2.13 analysis). Instead, the Court concludes that in the circumstances of these crimes, because Mr. Ramirez's own contemporaneous words constitute a generalized threat to hide the gun and shoot someone, he may not take advantage of a § 5K2.13 downward departure.

### 3. The Merits of the § 5K2.13 Downward Departure

Although the Court has determined that Mr. Ramirez is not eligible for a § 5K2.13 downward departure, in excess of caution, it will address the merits of his request. In his sentencing memorandum, Mr. Ramirez relies upon the testimony of his expert at trial, Dr. Angel Martinez. However, in its earlier Order, the Court firmly rejected Dr. Martinez's testimony. *Ramirez*, 495 F. Supp. 2d at 122-23. It found that his two professional opinions were "irreconcilable," that he selectively omitted "germane information," and that his views

---

[11] Mr. Ramirez did not elaborate as to whom he was referring when he used the term, "the man"; however, the phrase is often a general expression for an authority figure, such as a police officer and would be consistent with his statement to the pawn shop owner about hiding the firearm from a police officer.

15

"cross[ed] the line between expert analysis and advocacy." *Id.* at 123. It described his opinions as being of "limited usefulness." *Id.*

The Court credited Dr. Scronce, finding that "Mr. Ramirez was not suffering from an underlying mental disease or defect on April 13, 2005; instead the Court finds that Mr. Ramirez is highly manipulative and his psychiatric presentation is consistent with malingering." *Id.* at 51. The Court also found that Mr. Ramirez understood what he was doing when he went to purchase the gun. *Id.* at 48.

Even though Mr. Ramirez reminds the Court that for sentencing purposes he must bear his burden only to the "preponderance of the evidence" standard, in contrast with the clear and convincing evidence standard he had at trial, *Def.'s Sentencing Mem.* at 11, the difference in standard of proof does not work a difference in result. Mr. Ramirez points to no specific evidence beyond vague assertions that the evidence from trial is proof that the Court should implement a 5K2.13 downward departure.[12] Mr. Ramirez has failed to sustain his burden for a § 5K2.13 reduction.

### D. Acceptance of Responsibility

United States Sentencing Guidelines § 3E1.1 allows a defendant's offense level to be decreased by two levels if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. Mr. Ramirez asserts that he is entitled to the two-level reduction because his defense was limited to the affirmative defense of insanity, through which he attempted to show that he did not have the required *mens rea* for the charged crimes. Mr. Ramirez emphasizes that he

---

[12] Mr. Ramirez's attorney states that he will provide the court with further evidence "if there are additional considerations the defense would like the Court to consider regarding diminished capacity." *Def.'s Sentencing Mem.* at 11-12. No such evidence has been provided.

> admitted the Government's allegations regarding the most serious charge in Count I (felon in possession). With respect to the fraud charges in counts II and III, he testified in a manner that is inconsistent with Frati's testimony, . . . [h]owever there is evidence that Mr. Sanchez-Ramirez was delusional at the time of the charged conduct, so his inability to testify in a manner consistent with other evidence should not eliminate acceptance . . . ."

*Def.'s Sentencing Mem.* at 14. The Government contends that Mr. Ramirez is not eligible for the reduction because the Government had to prove every element of every count in the indictment, and Mr. Ramirez argued that it had "failed to demonstrate that the defendant filled out the firearm transaction form and possessed the gun." *Government's Resp. to Def.'s Sentencing Mem.* at 7.

Leaving aside the question of whether the assertion of an insanity defense should be considered putting the Government to its burden of proof at trial, Mr. Ramirez did not simply assert an insanity defense. He claimed that the Government had not proven the false statements count, because due to his lack of fluency in English, he did not understand what the pawnbroker was saying to him and the language on the ATF Form 4473. *Ramirez*, 495 F. Supp. 2d at 116. He also attempted to blame the pawnbroker for some answers on the ATF Form 4473, claiming that the pawnbroker told him how to respond to the questions. *Id.* The Court rejected Mr. Ramirez's version of the events and reluctantly concluded that he was "highly manipulative and his psychiatric presentation is consistent with malingering." *Id.* at 123. With these findings, the Court declines to grant Mr. Ramirez a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.

### E. Sentencing Considerations Under 18 U.S.C. § 3553(a)

Finally, Mr. Ramirez argues that based on 18 U.S.C. § 3553(a)(1) and (a)(2), the Court should reduce his sentence.[13] His sentencing memorandum reflects on Mr. Ramirez's forced removal from Cuba, his subsequent troubles in the United States, his mental health problems, the nature of the crime for which he has been convicted, and the likelihood of political change in Cuba and the benefits of deportation. *Def.'s Sentencing Mem.* at 14-16. The Government does not consider § 3553 in its memorandum, reserving the right to address the sentencing factors at the time of sentencing. *Government's Sentencing Mem.* at 1. Due to the nature of Mr. Ramirez's arguments, and mindful of § 3553's requirement that the Court, "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence," this issue is best undertaken at the sentencing hearing. 18 U.S.C. § 3553(c).

## II. CONCLUSION

The Court concludes:

1. Mr. Ramirez's convictions for burglary in Florida are predicate felonies under the Armed Career Criminal Act;

2. The two felonies to which Mr. Ramirez pleaded guilty on March 1, 1990 are separate crimes under the ACCA;

---

[13] In relevant part, 18 U.S.C. § 3553(a) requires the Court to:
> "[I]mpose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

3. Mr. Ramirez is not eligible for a diminished capacity downward departure under U.S.S.C. § 5K2.13 and, if eligible, he has not sustained his burden to demonstrate that he is entitled to a § 5K2.13 downward departure;

4. Mr. Ramirez has not sustained his burden of demonstrating acceptance of responsibility for his offenses under U.S.S.C. § 3E1.1; and,

5. The Court will address other issues raised in the sentencing memoranda at Mr. Ramirez's sentencing hearing.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of December, 2007