UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| COSME SANCHEZ RAMIREZ, )<br>)<br>Movant )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent ) | Crim. No. 05-71-B-W<br>Civ. No. 10-130-B-W |

## **RECOMMENDED DECISION ON 28 U.S.C. MOTION**

Cosme Sanchez-Ramirez has filed a 28 U.S.C. § 2255 motion. He is seeking relief from his conviction and 180-month sentence for being a felon in possession of a firearm, making false statements towards acquiring the firearm, and impersonating a citizen of the United States. Sanchez-Ramirez initially advanced four habeas grounds. Two of these grounds were raised in his direct appeal to the First Circuit Court of Appeals -- the Court's failure to order a second competency hearing and the use of his burglary convictions as predicate 'violent felony' offenses for purposes of classifying him as an armed career criminal -- and were decided against him. See United States v. Sanchez-Ramirez, 570 F.3d 75 (1st Cir. 2009). Accordingly, he is not entitled to 28 U.S.C. § 2255 review of these claims, as I indicated in my April, 29, 2010, order to answer.

The United States has now filed an answer to the two remaining ineffective assistance of counsel claims: (1) counsel failed to advise Sanchez-Ramirez on the consequences of electing to proceed with a bench trial rather than a jury trial, and (2) counsel did not make certain sentencing arguments. Sanchez-Ramirez had until September 9, 2010, to file a response and he has not filed anything as of this date. For the reasons below, I recommend that the Court deny Ramirez 28 U.S.C. § 2255 relief.

## DISCUSSION

### A. The Conduct in Question and Sanchez-Ramirez's Direct Appeal

The First Circuit Court of Appeals summarized Sanchez-Ramirez's criminal conduct as follows:

> In April 2005, Sanchez attempted to purchase a handgun from a pawn shop and licensed firearms dealer in Bangor, Maine. A store employee, Orlando Frati, testified that he provided Sanchez with some assistance in filling out the required federal firearms purchase application, including pointing out to Sanchez that he had not answered a question seeking his citizenship status. Sanchez responded by writing "Yes, USA" on the form. He further answered that he was not a convicted felon, and that he was a Native American or Alaskan Native. All three answers were false.
> Sanchez examined two pistols while in the store. He did not purchase either of them, but mentioned that he preferred the smaller of the two because it was easier to conceal and thus avoid suspicion or be readily available for use in any confrontation with police. He also posed in front of a mirror with a gun in his pocket. Sanchez produced a social security card, but did not have the necessary photo identification to make a purchase. After promising to return with the proper identification, Sanchez left in the same taxi in which he had arrived. Frati had noted the license plate number of the taxi as was his habit with waiting cabs.

United States v. Sanchez-Ramirez, 570 F.3d 75, 77 (1st Cir. 2009). The application to purchase the firearm was denied, Frati contacted law enforcement, and Sanchez-Ramirez was taken into custody at a local motel. Id. at 77-78. The First Circuit reviewed Sanchez-Ramirez's "lengthy history of mental health problems" before and after the Mariel boatlift that landed him in the United States from Cuba as a sixteen-year-old. Id. at 78.

With regards to Sanchez-Ramirez's initial psychiatric examination stemming from his detention hearing, the licensed clinical psychologist who appeared at the competency hearing,

> concluded, among other things, that Sanchez exhibited "a general pattern of deceitful and manipulative behaviors," which she described as "hallmark signs of malingering." In particular, she noted that Sanchez often reported symptoms "for secondary gain," such as being hospitalized rather than jailed, or being allowed to receive meals in private.
> Regarding the pending criminal proceedings, Scronce found that Sanchez had a good relationship with his attorney, understood the charges against him and

2

had the ability to consult with counsel to aid in his defense. Accordingly, Scronce concluded that Sanchez was competent to stand trial.

Id. at 79.

With respect to the merits of the direct appeal, the First Circuit affirmed this Court's denial of Sanchez-Ramirez's motion for a second competency hearing premised on his erratic behavior (discussed below) at the June 11, 2007, hearing set to allow the parties to present closing arguments on the trial. Id. at 80-81. It also determined that this Court did not err in concluding that Sanchez-Ramirez was an armed career criminal, the sole sentencing issue raised on direct appeal. Id. at 81-83.

### B. Section 2255 Review and the Ineffective Assistance of Counsel Standard

The First Circuit set forth the standard for 28 U.S.C. § 2255 ineffective assistance claims in United States v. De La Cruz:

> "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a defendant must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other words, a defendant must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from. In this case, Defendant has demonstrated neither.
> Although the Supreme Court in Strickland discussed the performance prong of an ineffectiveness claim before the prejudice prong, the Court made clear that "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

514 F.3d 121, 140 (1st Cir. 2008); accord Alfano v. United States, 592 F.Supp.2d 149, 154-55 (D. Me. 2008). "[C]ounsel inevitably must decide where to focus his or her efforts; not every

3

fact can be double-checked." Peralta v. United States, 597 F.3d 74, 82 (1st Cir. 2010). As Strickland noted, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690.

With respect to Sanchez-Ramirez's sentencing claim: "In order to satisfy the 'prejudice' prong," Sanchez- Ramirez "must establish that 'but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence.'" Peralta, 597 F.3d at 79 -80 (1st Cir. 2010) (quoting Porter v. McCollum, __U.S. __, __, 130 S.Ct. 447, 453 (2009) (per curiam) and citing Strickland, 466 U.S. at 694 and Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Although he need not show 'that counsel's deficient conduct more likely than not altered the outcome' of his sentencing proceeding, he must establish 'a probability sufficient to undermine confidence in [that] outcome.'" Id. at 80 (quoting Porter, 130 S.Ct. at 455-56).

Not insignificant to the resolution of the pending motion is the First Circuit's acknowledgment that when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). In issuing the following recommended decision I cannot take such liberty but I can approach the record in a fashion that takes into account this Court's ability to do so on review of this recommendation.

  **C. Sanchez-Ramirez's Two Viable 28 U.S.C. § 2255 Claims**

  **1. Advice concerning electing to proceed with a bench trial rather than a jury trial**

Sanchez-Ramirez asserts that his attorney inadvisably counseled him to elect a bench trial over a jury trial. The transcript of the waiver hearing bears out that the Court bent over backwards to make sure that Sanchez-Ramirez's waiver of his right to jury trial was knowing

4

and intelligent. According to the logs generated by the electronic recording on that date, the portion of the January 5, 2007, proceedings on the opening day of trial addressing the waiver decision lasted from 1:16 pm to 2:00 pm and involved an interpreter.

The transcript of the waiver of jury trial (Doc. No. 274)[1] reveals the preliminary discourse for waiver of jury trial under Federal Rule of Criminal Procedure 23(a) and the necessity that the presiding judge assure himself that the defendant is competent to waive his right to a jury trial. (Jan. 5, 2007, Tr. at 3-4.) When asked if he was under the care of a physician or medical doctor, Sanchez-Ramirez asked for clarification through the interpreter (id. at 5) and eventually answered: "I think both" (id. at 6). He was unable to identify the medicines he had been taking and what medicines he had been given that morning. (Id. at 6- 8.) Faced with this lack of specificity, the Court asked the U.S. Marshal to retrieve the information. (Id. at 8.)

The following exchange then took place between the Court and defense counsel, Attorney Bate:

> THE COURT: Mr. Bate, have you had an opportunity to discuss with your client the advantages and disadvantages of a jury trial? …
> ….
> MR. BATE: ….. In answer to your question about reviewing the advantages and disadvantages of a jury trial, Your Honor, yes, we have gone over that several times.
> THE COURT: Mr. Bate, do you have any question as to whether your client today is making a knowing and voluntary waiver of his right to jury trial?
> MR. BATE: I have no questions, Your Honor. I believe his waiver is knowing and voluntary.
> THE COURT: Has anything come to your attention that suggests your client may not be competent today to waive jury trial?
> MR. BATE: Perhaps, out of an overabundance of caution, Your Honor, I would note one thing. I reviewed with Mr. Sanchez Ramirez what is likely to proceed today. I've talked to him about the waiver process and the fact that the trial will

---

[1] This transcript of the jury waiver proceeding and the brief proceedings of the first day of trial had not previously been transcribed, although the remainder of the trial had been transcribed. It is now transcribed and Sanchez-Ramirez has been sent a copy of the January 5, 2007, transcript.

>     probably start, but not go very far, before the end of the day, and it will be picked up again next Wednesday.
>         The -- the issue that concerns me is that he has asked me three times if he will be able to testify today. I wouldn't be disturbed at all if it were just once because it's kind of a confusing process. The fact that he asked me three times troubles me because -- because I'm not sure he understands the process after multiple explanations. Thank you.

(Id. at 9-10.) The Court then addressed Sanchez-Ramirez personally with the aid of the interpreter at great length. The composition and function of a jury was fully explained to Sanchez-Ramirez, as well as the need for a unanimous vote before a verdict could be returned. To the extent Sanchez-Ramirez posed questions, the court answered them. Ultimately defendant affirmatively waived his right to jury trial and signed the written waiver.

(Id. at 10 – 16.)

After receiving the list of medications from the U.S. Marshal and reviewing the medications with Sanchez-Ramirez, the Court asked defense counsel and the prosecutor whether they continued to recommend acceptance of the waiver and received affirmative response. (Id. at 16-18.) The Court concluded:

> There being no objection from the government, the court being satisfied that this defendant is competent to waive his right to a jury trial, that this defendant does understand the nature and significance of his right to trial by jury, that he is waiving that right knowingly, intelligently, and voluntarily, that the defendant has executed a written waiver of the right to jury trial, and that the requirements of Rule 23(a) have been fully met, this court accepts the defendant's waiver of the right to trial by jury. You may be seated.

(Id. at 18-19.) Following this defense counsel delivered a brief opening statement and took the direct testimony of one witness.

This was not the last that this Court heard from Sanchez-Ramirez on the jury waiver issue. During sentencing on January 18, 2008, Sanchez-Ramirez stated:

> THE DEFENDANT: If only the suit in my case that I feel so disappointed – ah, for example, the other day I just find out from somebody down in the prison said that I should have went for the jury trial instead to win with the jury. A letter to you that I jacked (phonetic) my case, and a very good lawyer probably wasn't supposed to see that. Be – this is very good point, that I could get my world changed with the unit, and you're only one. So far as I'm concerned, nobody at the open of my trial explain to me that you are – about this different, about the benefit of this.
> ….
> THE COURT: …Just so that I understand what you're saying, you're thinking that you might have had a better chance if you had gone in front of a jury as opposed to just one person, the judge?
> THE DEFENDANT: That's what I – I – somebody advised me in prison before I went to the law library, and this guy was working with the law book, and they told me, man, and why – why – why did you do that? You know, you could have been – had at least one of these 12 people in your favor and probably you'd have been – have a mistrial or maybe – mistrial or something, you know.

(Sentencing Tr. at 16-17.)

Based on the waiver colloquy as set forth in the transcript of the proceedings, it is evident to me that there is no <u>Strickland</u> performance deficiency. The transcript makes it clear that counsel consulted with his client about the decision to proceed with a bench trial and that Sanchez-Ramirez was fully aware that by so proceeding he was waiving his right to proceed with a jury and forgoing an attempt to convince at least one panel member that he was not guilty. <u>See</u> <u>United States v. Boynes</u>, 515 F.3d 284, 285 -89 (4th Cir. 2008) ("On this record we are presented with a presumptively valid written waiver, a full hearing on the validity of the waiver in open court, and a judicial finding that the waiver is knowing, intelligent, and voluntary."); <u>see</u> <u>cf.</u> <u>Osborn v. Belleque</u>, No. 0835631, 2010 WL 2640338, 1 (9th Cir. June 28, 2010) (unpublished) (28 U.S.C. § 2254 review of similar ineffective assistance claim); <u>Jackson v. Ray</u>, 292 Fed.Appx. 737, 742-743, 2008 WL 3919372, 5 (10th Cir. Aug. 27, 2008) (unpublished) (same); <u>see also</u> <u>Adamson v. United States</u>, 288 Fed.Appx. 591, 594, 2008 WL 2894309, 3 (11th Cir. July 29, 2008). What his current argument amounts to is perhaps buyer's remorse but this does not in

7

itself warrant relief on a theory of ineffective assistance. The completeness of the record with regard to the waiver decision forestalls the need to speculate as to whether or not Sanchez-Ramirez was prejudiced by presenting his case to the Court rather than a jury. See cf. Adamson v. United States, 288 Fed.Appx. 591, 594, 2008 WL 2894309, 3 (11th Cir. July 29, 2008). However, the history of Sanchez-Ramirez's conduct over the course of this criminal case -- including dramatic variability[2] -- suggests that counsel had a justifiable tactical reason for recommending that his client proceed by jury waiver. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

    **2.**    **Attorney performance during sentencing**

Sanchez-Ramirez's remaining 28 U.S.C. § 2255 claim is that his attorney failed to present 18 U.S.C. § 3553 factors for a downward departure or present the proper medical records and history with respect to his mental capacity. He explains:

> Cosme was forcibly deported from Cuba to the United States as a very young man. As the Court heard at trial, he did not know this county, its people, language or customs. The Cuban government single[d] out Cosme for deportation because of mental health issues, …. which he had self-medicated with alcohol since the age of 7. In many ways, his difficulties in American society [were] predetermined by these factors. Cosme was more than a man without a country: he was profoundly isolated from within because of his mental health issues and from without because of social and language issues. It would be inappropriate for the court to ignore these issues. Cosme attempted to purchase a firearm through a

---

[2] See Sanchez-Ramirez, 570 F.3d at 79 ("The Magistrate Judge, in addition to accepting Scronce's conclusions, noted that Sanchez acted appropriately during courtroom proceedings, and ultimately found Sanchez competent to proceed."); id. ("In June 2006, defense counsel moved for another pretrial evaluation on the grounds that Sanchez was unreasonable and uncooperative."); id. ("The trial proceeded uneventfully."); id. ("Three days prior to the scheduled arguments, defense counsel filed a third motion for a competency hearing. Counsel reported that Sanchez had stopped taking his prescribed medication and was having difficulty understanding the facts and issues relevant to his case."); United States v. Ramirez, 495 F.Supp.2d 92, 112 (D.Me. 2007) ("When the [June 11, 2007, argument] proceedings began, Mr. Ramirez engaged in a loud, continuous rant, a foul and abusive harangue against all present.").

8

> legal channel protected by ATF background checks. Had he known that his conduct was illegal, he could have avoided the background check by purchasing the firearm through a private sale. His possession of the firearm was fleeting. He made no attempt to leave the store with the firearm. Cosme's criminal background, although extensive, does not include convictions for crimes involving even an attempt to cause serious bodily injury. Even in his Terroristic Threats conviction, he was armed only with a portable stereo. Therefore, in terms of Count I and 18 U.S.C. § 922(g)(1), the most serious conviction before this court, "the nature and circumstances of the offense" and "the seriousness of the offense," § 3553(a)(1), (2)(A), are mitigating factors. Counsel was ineffective for failing to adequately prepare to argue Cosme's medical, and mental mitigating issues in the court.

(Sec. 2255 Mem. at 2-3, Doc. No. 266.)

Sanchez-Ramirez's claim that his attorney failed to advocate for him to get the court to take his troubled history and mental capacity into account is belied by the record. In his sentencing memorandum under the header "Section 3553 considerations," counsel stressed that his client's history was "both fascinating and sad." (Sentencing Mem. at 14.) He highlighted Sanchez-Ramirez's forcible deportation from Cuba because of mental health issues and his psychoses including symptoms of auditory hallucinations resulting in self-medication with alcohol since the age of seven. (Id. at 15.) He described his client as "profoundly isolated from within because of his mental health issues and from without because of social and language issues." (Id.) Counsel noted that "Sanchez-Ramirez attempted to purchase a firearm through a legal channel protected by ATF background checks. Had he known that his conduct was illegal, he could have avoided the background check by purchasing the firearm through a private sale" and that his possession of the firearm was fleeting. (Id.) With regards to criminal background, the memorandum noted that although it was extensive, there was no pattern of attempting to cause serious bodily injury. (Id.) (see also PSR at 23-24).[3]

---

[3] In his reply to the United States' sentencing submission, defense counsel argued only the "violent felony" ACCA concern. (Reply Sentencing Mem. at 1-9, Doc. No. 216.)

9

On December 21, 2007, this Court entered a sentencing order. (Sentencing Order, Doc. No. 222.) This resolved the question in the affirmative of whether Sanchez-Ramirez was an "Armed Career Criminal," due to his prior burglaries which the defense argued were not violent felonies under the Armed Career Criminal Act (id. at 1-10); concluded that Sanchez's 1990 burglary convictions should be counted as two crimes under the ACCA (id. at 11-12); addressed the defense's diminished capacity arguments (based largely on the evidence at the bench trial) and declined to embrace a 5K2.13 departure (id. at 12-16); declined to grant Sanchez-Ramirez a two-level reduction for acceptance of responsibility (Id. at 16-17); and deferred the 18 U.S.C. § 3553(c) determination until the sentencing hearing (id. at 18).

At the sentencing hearing this Court explained its careful consideration of the 18 U.S.C. § 3553(a) sentencing factors. The sentencing Court emphasized the history and characteristics of the defendant and the nature and circumstances of the offense. The Court concluded that Sanchez-Ramirez, when not properly medicated, was manipulative. He clearly did consider mitigating aspects of the circumstances of the offense, noting that Sanchez-Ramirez had no past history of improper use of a gun and that he did not actually purchase the firearm. In the final analysis the sentencing Court concluded that guidelines sentencing range was inappropriate because it was too severe. Instead the Court imposed the mandatory minimum prison term of fifteen years. The Court commented as follows:

> It seems to me, Mr. Ramirez, that the origins of this case can be traced to an historic wrong, a wrong which has ended in untold personal hardship and tragedy, including yours.
> The Mariel Boatlift of 1980, when Fidel Castro forced thousands of his own countrymen off the island because he deemed them undesirable, was an act of historic cynicism and extraordinary inhumanity. Mr. Ramirez, having led such a troubled youth in Cuba, you were one of many people placed on a boat at the point of a bayonet and simply sent away, and now, nearly three decades later, this country, this court, and you yourself are still dealing with the repercussions of that terrible wrong.

> I have, over the course of time, Mr. Ramirez, had an unusual chance to get to know you. I've seen you many times in this courtroom, and I want you to know that I'm very sympathetic to you. When you are on your medications, I find you an engaging and fascinating individual. And while I am placing you in prison for a long time, I can only wish you the very best.
>
> What I really wish for you is something that is beyond my power. I wish that the world would change so that you could go back to Cuba, where you belong. None of us can know what is going to happen in the next few years in Cuba, but there is always hope.
>
> If you do not return to Cuba, you will have to learn to live here, and you'll have to learn how to stay out of trouble. If you act like a bad man, you'll be treated like a bad man. If you act like a good man, you will find the world a much easier place to live in. I know you know the difference between being bad and being good, and I hope, for your sake and for everybody's sake, Mr. Ramirez, you choose to be good.
>
> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 180 months on Count 1, 120 months on Count 2, and 36 months on Count 3, said terms to be served concurrently.

(Sentencing Tr. at 38-42.)

The Court was well familiar with the circumstance of Sanchez-Ramirez's life story and medical history and took pains to address the very issues that Sanchez-Ramirez now faults counsel for not adequately impressing upon the court during sentencing. The bottom line is that counsel did strenuously argue the issues now identified by Sanchez-Ramirez during trial and the sentencing proceedings. On July 3, 2007, this Court entered a lengthy opinion setting forth "Findings of Fact and Conclusions of Law" finding Sanchez-Ramirez guilty on all three counts. United States v. Ramirez, 495 F. Supp. 2d 92 (D. Me. 2007). This opinion did a careful review of the United States' case-in-chief, id. at 94-96, and the defense case concerning Sanchez-Ramirez's mental health problems before and after his arrival in the United States, his family history of mental health problems, and his alcohol and drug use, id. at 96-100. It also carefully reviewed the testimony and reports of clinical psychologist Angel Martinez, the defense's key witness. Id. at 101-107. And the Court took into account the expert testimony of Dr. Scronce,

presented by the United States. Id. at 107-12. As relevant to the present § 2255 motion, the Court concluded that the mental health evidence did not negate mens rea as to any of the three counts. Id. at 112-20. It also examined the defense's presentation of the insanity defense and rejected it. Id. at 120-24. There is no question that the Court was apprised on his history and concerns about mental capacity which were fully litigated at the bench trial and revisited by counsel as part of the sentencing process.

Sanchez-Ramirez's claim of inadequate performance becomes even weaker if one takes a closer look at the docket. His attorney successfully moved for a psychiatric exam on April 19, 2005, shortly after these proceedings commenced; sought an independent mental examination in preparation for the competency hearing; filed a notice that he intended to present an insanity defense and introduce expert testimony towards this end; filed a motion for the approval of fees for a Spanish speaking psychologist; filed another motion for the approval of a second Spanish speaking psychologist; defended against the prosecution's motion in limine to exclude the insanity defense (albeit unsuccessfully); filed a trial brief that indicated that "Sanchez-Ramirez has specifically prohibited counsel from identifying the legal basis for defenses to be asserted at trial"; moved for reconsideration of the court's order granting the government's motion in limine; defended a second motion in limine by the United States on mental competency issues; filed a second motion for a psychiatric exam; defended against the United States' motion for discovery of medical records; successfully defended against yet another motion in limine seeking to exclude the insanity defense and mental-condition evidence; and filed, post-trial, a third motion for psychiatric examination.

Although counsel may not have delivered a seamless performance, he worked relentlessly and navigated not only the above motions and proceedings but persevered several times when it

seemed like the attorney/client relationship was at an impasse. Also notable in terms of pre-sentencing concerns and counsel's sentencing performance is Sanchez-Ramirez's truncated appearance for closing arguments hearing on June 11, 2007, during which, as the Court put it,

> the defendant engaged in what amounted to a rant, and after being warned, he refused to conduct himself appropriately and otherwise behave himself. He was using vulgar language, castigating the people in the courtroom, and it was apparent that the court had no choice but to remove him in order to conduct the proceedings in an appropriate way and protect the individuals in the courtroom.

(June 11, 2007, Tr. at 16.) Keeping in mind McGill's approval of employing first-hand experience in 28 U.S.C. § 2255 proceedings, I note the following exchange between this Court and defense counsel about counsel's performance in the case and his effort to yet again impress upon the court the severity of his client's ongoing psychological woes:

> THE COURT: Do you want to talk about the final issue, which is the motion for psychiatric evaluation? What -- my -- let me tell you my concern. <u>This has been -- you've done an excellent job, Mr. Bate, on this. You've represented this fellow – and it's been a hard client -- very well, and really, you've gone beyond the call of duty on it.</u>
>       But you've raised, on a number of occasions, the need to have the man psychiatrically evaluated, and the first was a defendant's motion for psychiatric examination in April of 2005, which is two years ago, and that was granted, and he was extensively evaluated at Fort Devens by Dr. Scronce, and, of course, Dr. Scronce then later testified.
>       Then you moved for a Spanish-speaking psychologist, and I granted that motion, and he was seen by Dr. Martinez, and Dr. Martinez testified here in trial.
>       Now, this is all oriented toward what -- first, whether he was competent to stand trial, which was a determination that was made. And then the second question was whether or not the insanity defense was going to be successful and also the mental condition issue. But the trial on that has occurred, and he sat in the courtroom, I think, for four days and testified at some length during the course of the trial.
>       So I'm reluctant, frankly, now that the case is closed, to order another psychiatric evaluation. I suppose it -- if I come to the conclusion that he is guilty, I could consider a psychiatric evaluation for purposes of sentencing and recommendations to the Bureau of Prisons, but I'm not sure how, now that the evidence is closed and he already had two psychiatric evaluations, a third one, at this late stage, would prove helpful. Am I missing something?

> MR. BATE: Well, no, I think there's always an interest in the closure to a criminal case, especially when it's been pending, by the time sentencing comes around, two and a half years. That's an awful long time in this case especially.
>
> All I can do is just -- just reiterate. I've noticed that he's deteriorated a little bit. He tells me he's off his medications. He hasn't had -- he hasn't had a competency evaluation for over a year. Certainly things change, and I am not capable of telling you what's going on inside of Mr. Sanchez Ramirez's mind.
>
> I think today's outbursts, as noted on the record by the court earlier, suggest that there may be something going on, with specific explanations and conclusions one could draw from that. But whether a competency evaluation would be helpful at this point, I just leave that to the court's discretion.
>
> I think sentencing's an important stage of any criminal procedure -- proceeding, and I think that if a -- for example, if a client -- if a defendant's going to understand the sentencing process or meaningfully exercise his or her right to allocution, it's equally important that we all understand he's competent to do so.

(Id. at 36-38) (emphasis added). This interchange between Court and defense counsel preceded counsel's efforts regarding sentencing, of which Sanchez-Ramirez now complains. However, when it comes to the concerns that Sanchez-Ramirez now contends that counsel inadequately argued to the court vis-à-vis sentencing, there is no question in my mind that this case is a rather unique example of how issues raised in the guilt phase of the proceeding flowed through into sentencing and did so to a large extent because of defense counsel's dogged determination on his client's behalf from the commencement of the case through to the entry of sentence.

In sum, I cannot detect in the extensive record of the underlying criminal case sufficient reason to conclude that there was any Strickland performance deficiency in what was clearly a very difficult case for counsel to navigate or any Strickland prejudice given this Court's careful consideration of the circumstances of Sanchez-Ramirez's history leading up to this substantial federal sentence. See Peralta, 597 F. 3d at 80.

**Conclusion**

For the reasons stated above, I recommend that the Court deny Sanchez-Ramirez 28 U.S.C. § 2255 relief. I further recommend that a certificate of appealability should not issue in the event Sanchez-Ramirez files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 15, 2010.